## No. 10,711.

### THE CITY OF NEW ORLEANS VS. THE FIREMEN'S CHARITABLE ASSOCIATION.

1. This is a suit to recover certain moneys paid by the City to the defendants under a contract with the latter to extinguish fires within New Orleans.

2. There is no allegation that the money paid by the City was paid in error, or that any portion of the service stipulated in the contract between plaintiff and defendant was not efficiently performed, or that the City has suffered any injury or damage whatsoever in consequence of the particular omissions alleged in the petition.

3. To this petition defendant interposed the exception of no cause of action, which was sustained and the suit dismissed.

4. The stipulated modes for the execution of the thing contracted to be done are not the essence of the contract. The mode may be waived if the performance is equally as efficient—the compensation stipulated is still due, although the performance may have been more ecomical than it would have been had the stipulated mode been followed.

5. In the action of repetition the averments in the petition must show that what is demanded has been paid by mistake or delivered on a condition which has not been performed.

APPEAL from the Civil District Court for the Parish of Orleans. King, J.

---

*Carleton Hunt*, City Attorney, for Plaintiff and Appellant:

The contract of the City of New Orleans with the Firemen's Charitable Association and its successors, for the extinguishment of fires in this city, can not be modified as if it were an ordinary contract.

The first contract herein involved, with clearly defined stipulations, having been, after due advertisement, adjudicated, as required by law, to the lowest bidder, the Firemen's Charitable Association, it was clearly beyond the power of the City of New Orleans, even by formal ordinance, to declare that certain stipulations in the contract, requiring an outlay of some $25,000 per annum were deemed too onerous, and were dispensed with.

Repetition is the act by which a person seeks to recover what has been paid or delivered on a condition which has not been performed. C. C. 2123, 1893, 2301; C. N. 1235, 1376.

The action in repetition is treated in the French law under the title *De La Repetition De l'Indu*, and the French law has borrowed this action from the Roman civil law. *Laurent Code de Droit Civil, Vol. 2, p. 199; Bouvier's Law Dictionary, Verbo Repetition*. The party to whom payment is made is bound *quasi ex contractu*, or rather *ex distractu*, than *ex contractu*.

An overpayment is made, not only when a party pays more than he actually owes, but also when he neglects to make a deduction which he had the right to make.

Sections 13 and 15 of the Fire Contract, in providing a regular fire service for New Orleans, with skilled salaried employes, are of the essence of the Fire Contract, and were so designed to be in the exercise of the police power of the City.

The sections referred to do not provide mere modes. The Fire Contract is a commutative contract. The true consideration of the contract, on the part of the City, is the money to be by it paid, and on the part of the Firemen's Charitable Association, on the other hand, the services to be performed strictly in accordance with the provisions of Ordinance 1819 C. S., that is to say, " in accordance with all the conditions and stipulations therein contained in every particular."

The doctrine of putting *in mora*, as a condition precedent to recovery, is applicable to an action sounding in damages. The action of the City herein, being an action in repetition, sounds *in quasi contract*, and therefore the doctrine in question is inapplicable.

The utility and wisdom of putting *in mora*, as a condition precedent for recovery, have never been discerned by the Supreme Court of Louisiana. Putting *in mora* is expressly confined by the court to cases of purely passive breaches of contract. In the present case there being a working and efficient endeavor

on defendant's part to do a thing differently from the way in which it was undertaken to be done, the condition of inactivity or the passive state is impossible. It is abandoned for the opposite. The invasion of adversary rights is thus made complete and sure. There could, in point of fact, be no more certain way of attacking and overthrowing them. This is exactly that defective execution, in presence which the Supreme Court of Louisiana has pronounced a putting *in mora* uncalled for and useless. Irwin vs. Fenwick, 6 Martin N S. 2314; Morton vs. Pollard, 9 La. 174; Levy vs. Schwartz & Bro., 34 La. An. 214; Beck vs. Fleitas, 37 An. 492.

There is no conflict between Articles 2301 and 2302 of the Civil Code. Article 2301 fixes the obligation of a party who has received, whether through error or knowingly it matters not, what was not due. Article 2302 has relation to a person who, believing himself to be a debtor, pays what he does not owe.

*White & Saunders* and *L. O. Donnell*, for Defendant and Appellee, cited: Clark vs. Farrar, 3 M. 248; Ringley vs. Goodloe, 7 An. 295; Teutonia National Bank vs. Wagner, 33 An. 732; C. C., Art. 1768.

The opinion of the court was delivered by

McENERY, J. On the 26th day of October, 1881, in accordance with the terms of Ordinance 7346, A. S., the City of New Orleans entered into a contract with the Firemen's Charitable Association, providing "*for the extinguishment of fires in the First, Second, Third and Fourth Districts of the City of New Orleans.*"

The ordinance which authorized the contract was entitled: "An Ordinance *for the extinguishment of fires in the First, Second, Third and Fourth Districts of the City of New Orleans.*"

That Ordinance which was embodied in the contract substantially provided as follows: That a bid should be solicited in accordance with section 23 of the City charter, *for the contract to extinguish fires in the First, Second, Third and Fourth Districts* for the term of five years, from the 15th day of December, 1881, to the 15th day of December, 1886, in conformity with the terms of the ordinance.

Section 3 of the Ordinance provides that the fire department shall consist of a board of control and a board of fire commissioners, composed of five members, one chief engineer, at least two assistant engineers, one foreman and two assistant foremen for each company, nineteen steam fire engines, one hand engine, twenty hose carriages, four hook and ladder companies, and eight portable fire extinguishers.

Sections 4 to 7 provides the kind of apparatus for extinguishing fires to be kept by the contractor.

29

Sections 8 to 11 define the power of the chief engineer and assistant engineers, and other officer of the department, and provide for full reports to the City Council of the condition of the department, and the occupation and residence of its members.

Section 12 provides as follows: "The officers and employés of steam fire companies shall be practical and experienced firemen; the employés shall consist of at least one engineer, one driver, one fireman, one hose carriage driver, and one pipeman, who shall be stationed at the house of said company, and shall be constantly on duty."

Section 13 provides: "The officers and employés of the hook and ladder companies shall be practical and experienced firemen; the employés shall consist of at least one driver, one tillerman, and four laddermen, who shall be stationed at the house of said company, and shall be constantly on duty."

Section 14 provides: "The officers and employés of the hand engine company shall be practical and experienced firemen; the employés shall consist of at least one driver, and one hose carriage driver, who shall be stationed at the house of the company, and shall be constantly on duty."

Section 15 defines, in some particulars, the duty of the chief engineer and assistants, and board of fire commissioners, and provides "that the chief engineer and assistant engineer and board of fire commissioners shall give bond for the faithful performance of their duties."

Section 25 provides for the election of the chief and assistant engineers, and the officers and employés of the various companies, *and gives power to the board of fire commissioners to remove or dismiss them from office for violating any part of the Ordinance.*

Section 26 provides that the contractor shall keep on hand and ready for service one extra serviceable steam fire engine, one hose carriage, one hook and ladder carriage, four horses, and 10,000 feet of first quality hose.

Section 27 provides: "That upon the adjudication of the contract, the contractor shall elect a board of fire commissioners, consisting of five practical and experienced firemen, *and submit the same to the City Council for confirmation,* four of whom shall be residents of the four fire districts, respectively; and said commissioners shall hold office for one, two, three, four and five years, to be determined by

lot upon their appointment, the senior member in age to be *ex officio* chairman."

Section 28 gives to this board the power of trying, removing or suspending any officer or employé of the various companies.

Section 29 provides that: "The City Council, upon the adjudication of the contract, shall appoint a board of control consisting of five members, as follows: the mayor, two presidents of local insurance companies, and two citizens, possessed of, in their own right, the sum of $10,000 in improved and real estate, who shall continue in office for the term of the contract, and in case of death or resignation their successors to be appointed in the same manner; the mayor to be *ex officio* chairman. Said board of control shall have general supervisory power over the contractor, fire commissioners and attaches of the fire department, *with power to dismiss the fire commissioners for any violation of this Ordinance*, the contractor shall furnish the board with a secretary, and such stationery as they may require to call meetings and keep their minutes."

Section 30 provides *that the contractor shall give a bond for $25,000 conditioned for the faithful performance of the contract.*

Section 34 gives the Administrator of Commerce supervision over the fire department, and makes it his duty to report quarterly upon the efficiency or inefficiency of said department.

The contract recites the advertisement for bids under the Ordinance, and the fact that the Fremen's Charitable Association was the lowest bidder for the price and sum of $800,000, at the rate of $160,000 per annum. The contract also sets out Ordinance 7383, A. S., accepting the bid. That Ordinance is as follows:

"*Be it Ordained*, That the bid of the Firemen's Charitable Association of New Orleans, of $160,000 per annum, *for the extinguishment of fires*, under Ordinance 7346, A. S., be and the same is hereby accepted."

The contract thus entered into ran to expiration. New bids were then called for covering the same period from the 15th day of December, 1886, to the 15th day of December, 1891. A bid having been made by the Firemen's Charitable Association for this new contract, that bid was ultimately accepted under the terms of an Ordinance, 1890, C. C., the title, preamble and first section of which Ordinance are as follows:

"An Ordinance, extending for a period of five years, ending De-

cember 15, 1891, the contract with the Firemen's Charitable Association *for the extinguishment of fires in the First, Second, Third and Fourth Districts of the City of New Orleans,* under Ordinance 7346, A. S., with certain modifications herein specified:

" WHEREAS, The proposition of the Firemen's Charitable Association, of this City, *for the extinguishment of fires,* is considered in point of economy far more desirable than the proposal submitted under the terms of the specifications adopted by the Council, and under which the Firemen's Charitable Association presented the lowest bid, to-wit: $190,000; and

" WHEREAS, The financial condition of the City will not permit, or does not warrant any increase of appropriation for the purpose, and considering the efficiency of the service rendered by the Firemen's Association, in the carrying out of its contract in the past, as sufficient evidence of their good faith in the future.

" SECTION 1.   *Be it Ordained,* That Ordinance 7346, providing for the extinguishment of fires in the First, Second, Third and Fourth Districts of this City, be and the same is hereby reënacted for the term of five years, ending December 15, 1891; and that the conditions and obligations imposed by said Ordinance be extended during said period for the sum and price of $160,000 per annum, with the following alterations and modifications."

The Ordinance then modifies the Ordinance under which the first contract was made, No. 7346, in some minor details; changes the board of control by providing that it shall consist of three presidents of local insurance companies, not connected or identified with the contractor or the contractors, and two citizens not connected with the contractor or contractors who pay taxes on at least $10,000 of improved real estate in their own right, and in case of the death or resignation of any member of the board of control, their successors to be elected by the City Council.

On the 10th day of June, 1887, the Firemen's Charitable Association, the contractor, transferred its apparatus and rights of all kind, under the contract, to a new corporation, the Firemen's Charitable Association of New Orleans, which had been incorporated under the general laws of this State; this last corporation being the defendant in this case.

The Firemen's Charitable Association of New Orleans is the successor of the Firemen's Charitable Association.

The petition of the plaintiff avers that by the contract, the contractor was required to keep employés in its service, aggregating 124 men, and that instead of this number the defendant association had in its employ during the continuance of its contract not more than seventy, thus avoiding an outlay of $25,920; that there was a failure on the part of the defendant to keep at Milneburg the number of men and horses required by the contract, and an expenditure of $8800 was thus avoided; that the defendant failed to keep the required amount of hose, there being a deficiency of 4750 feet, worth $4275.

The mere statement of the case is sufficient to show that the dismissal of the suit by the District Court on the exception of no cause of action was proper.

The Ordinance authorized a contract to be awarded to the lowest bidder, to extinguish fires in the districts named in the Ordinance. The Ordinance required the contractor to keep up its equipments to a certain standard so as to insure a faithful performance of the contract. A bond was also exacted for this purpose, and a board of commissioners was designated in each contract to see to its faithful performance.

There is no averment in the petition that the fires were not extinguished as required by the contract, or that the fire department, under the control and management of the defendant association was not sufficient. The City of New Orleans, during the existence of the contract, made regular payments as they fell due. The petition does not disclose any damage suffered by the City in consequence of any violation of the contract. It had nothing to do with the payments made to the employés, or for payments of money for equipments. These expenses were borne by the association, and the money paid on the contract was not destined for any particular purpose except for the extinguishment of fires.

The action brought by the City is one of Repetition, by which a person demands and seeks to recover what he has paid by mistake or delivered on a condition which has not been performed. In order to entitle a party to recover back money paid by mistake, it must have been paid by him to a person to whom he did not owe it.

There is no averment in the petition of plaintiff to maintain the action. There is no averment that the money was paid through error in law or fact, or that it was delivered on a condition which

has not been performed. The condition was the extinguishment of fires in certain districts of the city. From the absence of any averment in the petition that the fires were not extinguished, and from the averments annexed to the petition particularly affirming that this condition was performed, we are of opinion that the main purpose of the contract was faithfully executed.

The complaint is to the deficiencies in the minor parts of the contract, relating to the employment of a certain number of men, and the use of equipments. During the execution of the contract the City accepted the fire department tendered by the association, with the alleged deficiencies. The City, therefore, has no just cause of complaint unless it can show some damage from the failure of the association to carry out its contract by reason of the alleged deficiencies.

Judgment affirmed.